**SO ORDERED.**

**SIGNED this 22 day of August, 2017.**



**Stephani W. Humrickhouse**
**United States Bankruptcy Judge**

___

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF NORTH CAROLINA
## RALEIGH DIVISION

IN RE:

CLYDE RICHARD EDWARDS
KRISTI WOODS EDWARDS

DEBTORS

CASE NO.
16-06436-5-SWH

CHAPTER 7

## ORDER REGARDING MOTION TO DISMISS

The matter before the court is the motion to dismiss pursuant to 11 U.S.C. § 707(a) filed by Dori Thomas ("Dr. Thomas"), Dkt. 21, as joined by Wells Fargo Bank, N.A. ("Wells Fargo"), Dkt. 31. A hearing took place in Raleigh, North Carolina on June 27, 2017.

### BACKGROUND

Clyde Richard Edwards ("Mr. Edwards") and Kristi Woods Edwards ("Dr. Edwards") filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code on December 15, 2016. They filed their schedules on December 29, 2016, Dkt. 11, and amended Schedules I and J on January 23, 2017, Dkt.12. On January 23, 2017, the chapter 7 trustee submitted a report of no distribution, indicating that the debtors have no non-exempt assets available for distribution from the bankruptcy estate. Dr. Thomas filed her motion to dismiss on March 24, 2017, contending that

the bankruptcy case should be dismissed for cause.[1] Wells Fargo joined in the motion on June 23, 2017.

Dr. Thomas and Dr. Edwards were previously engaged in a medical practice together, Building Blocks Pediatrics, LLC, and they are both obligated as guarantors on the business debts. In addition, both of their spouses have guaranteed some of the business debt. The obligations of the practice are in default, and some of the creditors have initiated collections procedures against the guarantors as detailed below.

According to the amended Schedule I, Mr. Edwards is an assistant professor at East Carolina University with gross monthly wages of $7,972.66. Dkt. 12 at 1. Dr. Edwards is a physician with Blue Cross and Blue Shield of North Carolina with gross monthly wages of $17,750.01. *Id.* After subtracting payroll deductions, their combined net monthly income is $16,678.35. *Id.* at 2. The amended Schedule J identifies monthly expenses totaling $12,989.99, with a balance remaining of $3,688.36. *Id.* at 4. Schedule J includes $1,200 in assistance provided to Dr. Edwards' father, and a $1,503 mortgage on property that is not the debtors' residence. *Id.* It also lists $200 per month in charitable contributions and religious donations, with a note at Line 24 that "church contributions will increase." *Id.*

Schedule E/F lists nonpriority unsecured debt totaling $849,849.09. Most of the debt is listed as "business debt," the majority of which is a guaranty of a lease obligation to Davis Drive 3607 LLC ("Davis Drive") in the amount of $700,000. Dkt. 11 at 20-26. Schedule C/D lists a secured claim held by Wells Fargo Bank SBA Lending in the amount of $695,000, secured by real

---

[1] At the outset of the hearing, the court inquired as to Dr. Thomas' standing to seek dismissal. It was established that Dr. Thomas has received demands and made payments on debts guaranteed by both Dr. Thomas and Dr. Edwards, possibly giving rise to a claim for contribution or indemnification and establishing Dr. Thomas as a party in interest with standing pursuant to § 707(a).

2

property in Robeson County with a scheduled value of $235,400. *Id.* at 18. It appears that the Wells Fargo lien is in third position, with $594,967 of the claim indicated to be unsecured. *Id.* Schedule H identifies Building Blocks Pediatrics, LLC as a co-debtor on a number of the scheduled debts, and Mike and Dori Thomas as co-debtors on the Wells Fargo debt. *Id.* at 29. Though not listed as co-debtors in Schedule H, the testimony and documentary evidence established that the Thomases are also guarantors on the lease obligation to Davis Drive.

## DISCUSSION

### I. STANDARD AND CONTENTIONS

Section 707(a) provides, in relevant part,

(a) The court may dismiss a case under this chapter only after notice and a hearing and only for cause, including –

(1) unreasonable delay by the debtor that is prejudicial to creditors . . . .

11 U.S.C. 707(a). "Cause for dismissal under § 707(a) has been held to include a lack of good faith in filing the petition." *In re Marino*, 388 B.R. 679, 682 (Bankr. E.D.N.C. 2008) (citing *McDow v. Smith*, 295 B.R. 69 (E.D. Va. 2003); *In re Zick*, 931 F.2d 1124, 1126-27 (6th Cir. 1991).

In ascertaining the debtor's lack of good faith the court should apply a totality of the facts and circumstances test. *Marino*, 388 B.R. at 682 (citations omitted). Some of the factors include:

1. The debtor reduces creditors to a single creditor in the months prior to the filing of the petition;
2. The debtor failed to make lifestyle adjustments or continued living an expansive or lavish lifestyle;
3. Debtor filed the case in response to a Judgment pending litigation . . . ;
4. The debtor made no efforts to repay his debts;
5. The unfairness of the use of Chapter 7;
6. The debtor has sufficient resources to pay his debts;
7. The debtor is paying debts to insiders;
8. The schedules inflate expenses to disguise financial well-being;
9. The debtor transferred assets;

3

    10.    The debtor's overly utilizing the protections of the Code to the unconscionable detriment of creditors;
    11.    The debtor employed a deliberate and persistent plan of evading a single major creditor;
    12.    The debtor failed to make candid and full disclosure;
    13.    The debts are modest in relation to assets and income; and
    14.    There are multiple bankruptcies or other procedural "gymnastics."

*Marino*, 388 B.R. at 682 (citing *In re O'Brien,* 328 B.R. 669, 675 (Bankr. W.D.N.Y. 2005)). The court may consider the debtor's ability to repay debts, but ability to repay debts alone is not sufficient to dismiss a case under § 707(a)." *Id.* (citations omitted).

    Dr. Thomas contends that the following facts support dismissal:

(1)     The debtors have the ability to pay $3,688 per month toward their debts;
(2)     If the debtors sell or surrender their second home, they could commit an additional $2,099 per month to repay other debts, but their statement of intention indicates they intend to retain that property;
(3)     The Edwardses have made no lifestyle adjustments to repay debts; instead they purchased new cars in 2015 (a Toyota Camry hybrid with a value of $14,275) and 2016 (a Honda Pilot with a value of $37,350) that they intend to keep and substantially increased their contributions to their church at the same time they filed the petition;
(4)     The debtors are spending approximately $4,000 per month (combined mortgage payment and cash) to support Dr. Edwards' father. While that is laudable, they should also make some effort to repay debts;
(5)     The filing appears to be directed toward discharging two large business debts: the debts to Wells Fargo and Davis Drive (totaling 71% of the scheduled debt). Because of the filing, these creditors are looking to Dr. Thomas for full payment;
(6)     It is unfair to Dr. Thomas for the Edwardses to discharge the debt, leaving her with all of the liability, when they have the ability to repay;
(7)     There was no effort to resolve the debts prior to filing; and
(8)     Item 18 of the Statement of Financial Affairs reflects that the debtors transferred property for no consideration in June 2015.[2]

---

[2] At the hearing and based on the evidence, Dr. Thomas acknowledged that the prepetition transfer was not improper and should not be weighed in the § 707(a) analysis.

In summary, Dr. Thomas contends that the debtors should not be allowed to use chapter 7 to escape their debts when they have the ability to pay a meaningful portion of those debts and satisfy many of the *Marino* criteria.

Wells Fargo maintains that the increase in church contributions from $200 per month to $1500 per month is troubling, and noted that in a chapter 11 case the debtors would be required to pay disposable income to plan payments over five years. Over the same five years, if the Edwardses are allowed to stay in chapter 7, the church would receive $90,000 in contributions while Wells Fargo would receive nothing on its debt. Wells Fargo also contended that there would be a chilling effect for SBA lenders, who extend credit to high-income physicians with the expectation of being repaid and low risk of a discharge of the debt in bankruptcy.

The debtors, on the other hand, contend that

(1) The filing was not solely for the purpose of discharging the business debt; there is also a 2016 tax liability of $17,341 to be addressed and the debtors need to increase tax withholdings to prevent future shortfalls (thereby reducing the amount of available disposable income);
(2) The debtors have appropriately increased their church contributions to $375 per week, also reducing the amount of available disposable income;
(3) Dr. Edwards' elderly father lives in the second home along with her younger brother, and occasionally her brain-damaged older sister, making the retention of the second residence an appropriate expense;
(4) The vehicle purchases were reasonable and prudent, as both new vehicles are equipped with additional safety features that are important to the debtors;
(5) The continuing support of Dr. Edwards' father is appropriate based on the facts;
(6) The debtors do not live a lavish lifestyle; and
(7) No transfer occurred that was detrimental to Dr. Thomas or the estate.

Further, the debtors maintain that when Congress enacted the "means test" for consumer debtors, it intended to eliminate entirely the ability to pay as a consideration for dismissal for cause for non-consumer debtors.

5

**II.    ANALYSIS**

As noted above, longstanding case law supports consideration of fourteen factors in determining whether a case was filed in bad faith and should be dismissed for cause under § 707(a), factors that have been continuously applied in this Circuit since the passage of BAPCPA in 2005. *See, e.g. In re Gilman*, No. 11-06036-8-SWH, 2012 WL 1230276, at *2-3 (Bankr. E.D.N.C. Apr. 12, 2012) and cases cited therein.  The ability to pay is one of those factors, but ability to pay alone is insufficient to support dismissal of the case.

The debtors contend that ability to pay should not be considered at all.  In support of that contention, they cite to *In re McVicker*, 546 B.R. 46 (Bankr. N.D. Ohio 2016), and *In re Chovev*, 559 B.R. 339 (Bankr. E.D.N.Y. 2016).  In *McVicker*, the court rejected an argument that the debtors had not engaged in "belt-tightening," but the debtors there were below-median income debtors, and the creditor objected to the debtors' failure to liquidate exempt assets to pay its debt.  Here, the issue is that the Edwardses are high-income debtors who could use their future income to repay debts – an entirely different analysis than *McVicker* where there would be little to no repayment obligation under a chapter 11 or 13 plan of reorganization.  In *Chovev*, the court found simply that ability to repay "cannot serve as the *principal* basis to dismiss a chapter 7 case for cause under § 707(a)." 559 B.R. at 348 (emphasis added).

Here, even based on their claimed income and expenses including the support of a parent and increased contributions to the church, the Edwardses clearly have an ability to repay some of the debts they seek to discharge.  While that is *one* factor, under § 707(a), the court still is tasked with determining whether other factors weigh in favor of dismissal.

The other factors that might apply are:

- The debtor reduces creditors to a single creditor in the months prior to the filing of the petition;
- The debtor failed to make lifestyle adjustments or continued living an expansive or lavish lifestyle;
- Debtor filed the case in response to a Judgment pending litigation . . . ;
- The debtor made no efforts to repay his debts;
- The unfairness of the use of chapter 7;
- The debtor's overly utilizing the protections of the Code to the unconscionable detriment of creditors; and
- The debts are modest in relation to assets and income.

In some ways, the factors overlap and evolve into something akin to the "smell test" articulated by the Sixth Circuit in the pre-BAPCPA case of *Indus. Ins. Servs., Inc. v. Zick (In re Zick)*, 931 F.2d 1124 (6th Cir. 1991). Dr. Thomas contends that because the debts largely arose from one business enterprise, the debtors effectively meet the first factor of filing to address only one creditor. The debtors disagree with the recharacterization of the "single creditor" factor to "one transaction." A different way of looking at this factor, however, is that because Dr. Thomas is repaying the debt, the majority of the debts to be discharged in this case would no longer be owed to the institutional creditors but instead owed to Dr. Thomas on theories of contribution or indemnification. That said, the court interprets the factor of "reduces creditors to a single creditor" to contemplate manipulation or preferential treatment of other creditors to the detriment of one. The Edwardses' choices of continuing support to Dr. Edwards' father and increasing their church contributions three-fold has the same effect as preferring some creditors over others.

The debtors contend that they do not live a lavish lifestyle, but that factor includes a failure to make lifestyle adjustments. Here, the debtors have made a few adjustments, but those adjustments increased, rather than decreased, their spending. Specifically, they purchased 2015 and 2016 model vehicles (one of which was with a trade-in of a 2014 Camry), incurring a

significant debt on the Honda Pilot, and increased their church contributions from $200 per month to $1500 per month *after* filing their petition.[3] And, as noted, the debtors give substantial support to Dr. Edwards' father through both monthly cash payments and providing him with a home for which they continue to pay the mortgage. While the vehicles were purchased for valid reasons (safety features) and the contributions to church and family are laudable, they cannot be viewed outside of the context of the debtors' efforts to leave over $1 million in debts unpaid.

While creditors may not yet have filed lawsuits against the Edwardses, several sent demand letters indicating their intent to pursue collection of the guarantees. The evidence also showed that Dr. Edwards made no effort to resolve the debts prior to filing despite some effort by Wells Fargo to enter a workout or offer in compromise. Further, Dr. Thomas entered into a payment plan with Davis Drive, showing that there was an opportunity to resolve that debt. The debtors testified that they did not make any effort to respond to the various demand letters, noting that they had already consulted with bankruptcy counsel at the time.

Finally, while the scheduled liabilities are certainly not modest, neither is the Edwardses' income. Their listed liabilities are close to $2 million, but that includes the mortgages on two properties and two vehicle loans that the debtors intend to repay, and their annual gross income exceeds $300,000.

After review of the cases, the court finds that dismissal for "cause" under § 707(a) continues to include lack of good faith, and that the fourteen *Marino* factors are instructive in

---

[3] While the court cannot consider contributions to religious organizations under § 707(b), there is no such prohibition under § 707(a), and "these monthly donations are part of the bigger picture which the court may consider in making its decision." *See Gilman,* 2012 WL 1230276, at *4 n.4 (citing *In re Collins*, 250 B.R. 645, 654 (Bankr. N.D. Ill. 2000)).

determining such lack of good faith. Weighing these factors, the court finds that this case should be dismissed for cause.

## CONCLUSION

Based on the foregoing, the motions to dismiss pursuant to § 707(a) is allowed. Within 14 days of the date of this order, the debtors may file a notice of conversion to chapter 11,[4] failing which this case will be dismissed without further notice or hearing.

## END OF DOCUMENT

---

[4] Based on a review of the Schedules, the debtors do not appear to be eligible for chapter 13.