IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:17-CV-457-BO

| | |
|---|---|
| CLYDE RICHARD EDWARDS, ) | |
| KRISTI WOODS EDWARDS, ) | |
| Appellants, ) | |
| ) | |
| v. ) | O R D E R |
| ) | |
| WELLS FARGO BANK, N.A., ) | |
| DORI THOMAS, ) | |
| Appellees. ) | |

ON APPEAL FROM THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
RALEIGH DIVISION

This cause comes before the Court on appeal by Clyde Richard Edwards and Kristi Woods Edwards, the debtor-appellants, of an order of the United States Bankruptcy Court for the Eastern District of North Carolina entered August 22, 2017. [DE 1-1]. The issues have been fully briefed, and a hearing was held before the undersigned on April 10, 2018, at Elizabeth City, North Carolina. For the reasons that follow, the decision of the bankruptcy court is reversed.

BACKGROUND

Appellant Kristi Edwards and appellee Dori Thomas are physicians who began a pediatric medical practice called Building Blocks Pediatrics, LLC. Both are obligated as guarantors on the business debts, and their spouses have also guaranteed some of the business debt. The business debts include two business loans from Wells Fargo and a commercial real property lease to Davis Drive 3607, LLC. Building Blocks Pediatrics was in operation from February 2014 to October

2016. In 2015, Building Blocks Pediatrics fell delinquent with its lease payments on the Davis Drive property and a notice of default was sent on November 19, 2015. The pediatric office experienced negative income of $409,795.00 in tax year 2014 and $283,700.00 in tax year 2015. In November 2016 Wells Fargo sent a letter to the debtors and co-guarantors regarding an offer of compromise. As of December 2016, the amounts owed on the Wells Fargo loans were approximately $695,000.00 and $46,208.91, respectively. Appellant Kristi Edwards also incurred trade debt to Byline Financial Group in the amount of $13,609.74 related to the pediatrics practice.

In December 2014, debtor-appellant Kristi Edwards became employed by Blue Cross Blue Shield and in 2016 earned an annual gross salary of $213,000.00. Her husband, debtor Clyde Edwards, is an assistant professor at East Carolina University in Greenville, North Carolina and earns an annual gross salary of $95,671.92. The appellant-debtors' listed a balance of $3,688.36 after subtracting monthly expenses from the couples' combined net monthly income. In December 2014, appellants financed the purchase of a 2015 Toyota Camry, and in March 2016, debtors financed the purchase of a 2016 Honda Pilot.

Appellant Kristi Edwards owns real property in Pembroke, North Carolina where her elderly father resides. Dr. Edwards' father does not pay rent, and the appellants provide him with $1,200.00 a month in support. The Pembroke property is encumbered with three mortgages – a primary and secondary mortgage as well as a third mortgage for the Wells Fargo business loan. The value of the Pembroke property was scheduled at $235,400.00. At the time appellants filed their bankruptcy petition they were contributing $200.00 per month to their church, but noted that this amount would increase; at the time of the filing of the bankruptcy court's order, the appellants were contributing $1,500.00 per month to their church.

On May 13, 2015, appellants paid a bankruptcy attorney the cost of filing a bankruptcy case, and the appellants filed their Chapter 7 bankruptcy petition on December 15, 2016. The bankruptcy schedules list nonpriority unsecured debt in the amount of $849,849.09, most of which is listed as business debt, including the guaranty of the Davis Drive lease obligation in the amount of $700,000.00. Wells Fargo has a secured claim in the amount of $695,000.00, which is secured by the Pembroke property. $594,967.00 of Wells Fargo's third position lien is unsecured. Mike and Dori Thomas are listed as co-debtors on the Wells Fargo debt, and are also guarantors on the Davis Drive lease obligation. Dori Thomas moved to dismiss the appellants' Chapter 7 proceeding pursuant to 11 U.S.C. § 707(a). Wells Fargo Bank, N.A., later joined the motion to dismiss, and the bankruptcy court held an evidentiary hearing on the matter on June 27, 2017. The bankruptcy court granted the motion to dismiss and dismissed the Chapter 7 proceeding by order entered August 22, 2017. The dismissal order is the subject of this appeal.

## JURISDICTION AND STANDARD OF REVIEW

Jurisdiction over this appeal is proper pursuant to 28 U.S.C. § 158(a), which provides that "[t]he district courts of the United States shall have jurisdiction to hear appeals...from final judgment, orders, and decrees...of bankruptcy judges entered in cases and proceedings referred to the bankruptcy judges under section 157 of this title." A bankruptcy court's findings of fact shall not be set aside unless clearly erroneous. *In re White*, 487 F.3d 199, 204 (4th Cir. 2007). "A finding is clearly erroneous when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948) (internal quotation marks and citation omitted). Legal conclusions made by the bankruptcy court are reviewed de novo. *In re White*,

487 F.3d at 204. Mixed questions of law and fact are also reviewed de novo. *In re Litton*, 330 F.3d 636, 642 (4th Cir. 2003).

The decision of the bankruptcy court to dismiss a petition under § 707(a) of the bankruptcy code is reviewed for abuse of discretion. *Janvey v. Romero*, 883 F.3d 406, 410 (4th Cir. 2018); *see also In re McCullough*, 229 B.R. 374, 376 (Bankr. E.D. Va. 1999). "An abuse of discretion occurs where the bankruptcy court (1) applies an improper legal standard or follows improper procedures . . ., or (2) rests its decision on findings of fact that are clearly erroneous." *In re Cahill*, 428 F.3d 536, 539 (5th Cir. 2005) (citation omitted); *see also Martin v. Stewart,* 499 F.3d 360, 363 (4th Cir. 2007) ("court abuses its discretion whenever 'its decision is guided by erroneous legal principles.'") (citation omitted).

## DISCUSSION

Section 707(a) of the bankruptcy code provides that a bankruptcy court may dismiss a case, after notice and a hearing, for cause. 11 U.S.C. § 707(a). A debtor's bad faith may be cause for dismissal of a petition under § 707(a), although "the bar for finding bad faith is a high one." *Janvey*, 883 F.3d at 412.

In determining whether the debtors had filed a petition in bad faith, the bankruptcy court in this case considered the totality of the circumstances, including fourteen factors outlined in *In re Marino*:

> 1. The debtor reduces creditors to a single creditor in the months prior to the filing of the petition;
> 2. The debtor failed to make lifestyle adjustments or continued living an expansive or lavish lifestyle;
> 3. Debtor filed the case in response to a Judgment pending litigation ...;
> 4. The debtor made no efforts to repay his debts;
> 5. The unfairness of the use of Chapter 7;
> 6. The debtor has sufficient resources to pay his debts;
> 7. The debtor is paying debts to insiders;
> 8. The schedules inflate expenses to disguise financial well-being;

4

    9. The debtor transferred assets;
    10. The debtor's overly utilizing the protections of the Code to the unconscionable detriment of creditors;
    11. The debtor employed a deliberate and persistent plan of evading a single major creditor;
    12. The debtor failed to make candid and full disclosure;
    13. The debts are modest in relation to assets and income; and
    14. There are multiple bankruptcies or other procedural "gymnastics."

*In re Marino*, 388 B.R. 679, 682 (Bankr. E.D.N.C. 2008); *see also McDow v. Smith*, 295 B.R. 69, 80 (E.D. Va. 2003) (listing eleven factors to be considered). When determining whether bad faith is present, no one factor should be elevated above the others, however, as these factors merely inform the inquiry; "[i]n short, bad faith exists only where 'the petitioner has abused the provisions, purpose, or spirit of bankruptcy law.'" *Janvey*, 883 F.3d at 412, 414 (quoting *In re Tamecki*, 229 F.3d 205, 207 (3rd Cir. 2000)).

  Although the bankruptcy court applied the correct legal standard and conducted a thorough examination of the facts and circumstances of the debtors' filing, this Court is left with the firm belief that a mistake was made when evaluating the evidence. The bankruptcy court relied on the following in its bad faith finding: the debtors' ability to pay, including their gross annual income of more than $300,000.00 a year; that the debtors were seeking to discharge business guarantee obligations where remaining guarantors would remain liable; that the debtors increased their church contribution to $1,500.00 per month after their bankruptcy petition was filed; their failure to make lifestyle adjustments, including the purchase of two new or newer model cars in 2014 and 2015; the debtors' plan to retain property in Pembroke, North Carolina which provided debtor Kristi Edwards' elderly father a place to live and their continuing to provide him with $1,200.00 per month in support; and the debtors' failure to attempt to resolve debts after receiving a letter from Wells Fargo with an offer in compromise. The bankruptcy court determined that these facts, considered together, did not pass "something akin to the 'smell test' articulated by the Sixth Circuit

in the pre-BAPCPA case of *Indus. Ins. Servs., Inc. v. Zick (In re Zick)*, 931 F.2d 1124 (6th Cir. 1991)." [DE 1-1 at 9].

The bankruptcy court did not have the benefit of a recently published decision from the Fourth Circuit, which held that "the remedy of dismissal" under § 707(a) *must* "be reserved for cases of real misconduct." *Janvey*, 883 F.3d at 412. The record reveals no misconduct by the debtors in this case. There is no evidence that the debtor-appellants acted fraudulently or with gross negligence. Their church contributions and support of an elderly parent are both condoned elsewhere in the bankruptcy code. *See, e.g.,* 11 U.S.C. §§ 707(b)(2)(A)(ii)(II); 1325(b)(2)(A). Although the bankruptcy court found these expenditures laudable, it, somewhat contradictorily, relied on them as evidence of the debtors' bad faith. While the bankruptcy court cited the debtor-appellants' purchase of new cars as evidence that they had failed to make lifestyle adjustments, there is no suggestion that the models of cars purchased were lavish, and the bankruptcy court credited the debtors' testimony regarding the importance of the new cars' safety features; indeed, these safety features may be of particular importance to debtor-appellant Clyde Edwards who commutes more than ninety miles one-way to work at East Carolina University. There is further no evidence that the debtor-appellants' lifestyle or expenses led to their bankruptcy petition. Rather, debtor Kristi Edwards endeavored to start a pediatric medical practice which was ultimately unsuccessful, and the debtors attempted to repay their creditors while the practice was operational. The bankruptcy code "incentivizes individuals to incur debt and thereby support both creditors and our capital markets . . .," and if "absolute depletion of one's assets [were] a prerequisite for bankruptcy relief, debtors and their families would be left destitute and without the means to become productive members of society." *Janvey*, 883 F.3d at 411, 416.

6

At bottom, although the Court's review of the bankruptcy court's decision is deferential, application of the recent *Janvey* decision results in a finding that the bankruptcy court abused its discretion by dismissing a petition where the debtors had not abused the "provisions, purpose, or spirit of the bankruptcy law." The decision of the bankruptcy court is therefore reversed.

## CONCLUSION

For the foregoing reasons, the decision of the bankruptcy court is REVERSED. This matter is REMANDED to the bankruptcy court for further proceedings.

SO ORDERED, this 22 day of May, 2018.

TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE

7